# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

JAMES NANCE,

    Plaintiff,                    CASE NO. 07-CV-11327

v.                             DISTRICT JUDGE LAWRENCE P. ZATKOFF
                                MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. **REPORT**

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, disability insurance, and Supplemental Security Income benefits. This matter is currently before the Court on cross motions for summary judgment. (Dkts. 14, 21.)

Plaintiff was 50 years of age at the time of the most recent administrative hearing. (Tr. at 23.) Plaintiff's relevant employment history includes a total of 8 years' work as a machinist, 3 years' work as a machinist, and 2 years' work as a live-in care giver. (Tr. at 58.) Plaintiff has a 12th grade education. (Tr. at 15.)

Plaintiff filed the instant claims on September 24 and September 30, 2003, alleging that he became unable to work on April 22, 2002. (Tr. at 46, 287.) The claims were denied initially and upon reconsideration. (Tr. at 34-36, 286.) In denying Plaintiff's claims, the Defendant Commissioner considered affective disorders, osteoarthrosis and allied disorders as possible bases of disability. (*Id.*)

On September 26, 2005, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Alfred H. Varga, who considered the case *de novo*. In a decision dated January 27, 2006, the ALJ found that Plaintiff was not disabled. (Tr. at 15-25.) Plaintiff requested a review of this decision on March 3, 2006. (Tr. at 10.)

The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[2] (AC-1, Tr. at 295-316), the Appeals Council, on January 26, 2007, denied Plaintiff's request for review. (Tr. at 6-8); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On March 27, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by

---

[2]In this Circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

3

substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279

F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C. Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*) Title II benefits are available to qualifying wage earners who become disabled prior to the

expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)(DIB); *see also* 20 C.F.R. § 416.905(a)(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### D. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was seen by Dr. Bela Sheh, M.D., in 1998 and again in 2002. (Tr. at 116-19, 124, 128, 130-31.) In mid-December 2005, Plaintiff was examined by Dr. Elisa Foster, D.O., at the request of the Family Independence Agency ("FIA"). Plaintiff was treated also by Dr. Janet D. Heasly, D.O. (Tr. at 140-53), and Dr. Mathias Wietz, D.O. (Tr. at 161, 165, 173, 176, 211). Plaintiff was treated by Dr. Edward Rose in August 2004 and was referred to Dr. A. Khalid, M.D. (Tr. at 162, 266). Plaintiff was seen by Dr. I.S. Villarosa, M.D., in June 2004 (Tr. at 164, 263), and by Dr. Nikhil K. Hemady in November 2004 (Tr. at 264).

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. at 24.) At step two, the ALJ found that Plaintiff's anxiety, depression, arthritis, alcoholism/drug abuse in remission were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform any of his previous work. (Tr. at 25.) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 25.) Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform less than a full range of light work and that there are a significant number of jobs in the national economy that he could perform such as 3,500 janitorial jobs, 1,800 security guard jobs and 3,500 packager and assembler jobs that exist in the southeastern regional Michigan economy. (Tr. at 25.)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 25.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

8

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

 2. **Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

First, as to Plaintiff's claims of disabling physical impairments, I suggest that substantial evidence supports the findings of the ALJ. In mid-December 2005, Plaintiff was examined by Dr. Elisa Foster, D.O., at the request of the Disability Determination Service (Tr. at 135-38), at which time she concluded that Plaintiff demonstrated a herniated disc within his low back and some tenderness but had a normal range of motion and strength such that he did not appear to be markedly physically limited for employment. (Tr. at 138.) Dr. Wietz diagnosed that the pain Plaintiff described was most likely secondary to spondylosis and ordered an MRI to be taken which revealed an "L5-S1 small disc herniation" and "mild lumbar degenerative disc disease and spondylosis" in August 2001. (Tr. at 193, 202, 239.)

An MRI of Plaintiff's right shoulder taken in August 2004 showed "minimal" thickening of a shoulder tendon, "scant" effusion in the vicinity of a bursa and otherwise normal structures with the exception of a small cyst. (Tr. at 162.) A CT scan taken in June 2004 noted only the presence of a "minute anterior spur formation along the dorsal spine" and "minimal narrowing of

9

the disc spacings at the mid dorsal region." (Tr. at 164, 263.) Pulmonary function studies conducted in November 2004 showed "near normal lung volume," "normal diffusion" and "evidence of a very minimal obstructive defect with no acute demonstrable reversibility." (Tr. at 264.) Chest x-rays taken at the same time found "no active intrathoracic disease." (Tr. at 265.) In August of 2005, Dr. Heasley stated that Plaintiff "could use physical therapy." (Tr. at 258.)

The primary dispute in this case revolves around Plaintiff's claims of disabling mental impairments. The Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated. This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a. Congress laid the foundation for making disability determinations when mental impairments are involved:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

42 U.S.C. § 421(h). Further, 20 C.F.R. § 404.1520a explains in detail the special procedure, and requires the completion of "a standard document outlining the steps of this procedure." 20 C.F.R. § 404.1520a(d). The regulation also requires the standard document to be completed and signed by a medical consultant at the initial and reconsideration levels, but provides other options at the administrative law judge hearing level. *Id.* Under this procedure, the Commissioner must first make clinical findings, i.e., the "A" criteria, as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. Then the Commissioner must

measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders, i.e., the "B" criteria.

The "B" criteria identify four areas which are considered essential to the ability to work. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. (*Id.*) Under the second criterion, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. (*Id.*) The third function, "concentration, persistence and pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. (*Id.*) The final area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. (*Id.*)

If the first two "B" criteria receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe and therefore cannot serve as the basis for a finding of disability. 20 C.F.R. §§ 404.1520a(c)(1), 404.1521. If, on the other hand, the "B" criteria indicate that the mental impairment is severe, the Commissioner must then decide whether it meets or equals a listed mental disorder. 20 C.F.R. § 1520a(c)(2). The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the "B" criteria have been met. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq.* If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs

notwithstanding his mental impairment. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The findings of a psychologist are relevant in establishing the existence and severity of a mental impairment, and a psychologist's evaluation of the disabling nature of a mental impairment need not be given less weight than that of a psychiatrist. *Crum v Sullivan*, 921 F.2d 642 (6th Cir. 1990).

In this case, as to the "A" criteria, the ALJ found that Plaintiff suffered from anxiety, depression, and alcoholism/drug abuse in remission which he rated as "severe." (Tr. at 19.) Turning to the "B" criteria, the ALJ found that Plaintiff's mental impairment led to moderate restrictions in daily living, moderate difficulties in maintaining social function, moderate difficulties in maintaining concentration persistence or pace, and no deficiencies of deterioration in work-like settings. (Tr. at 20.) Based on these findings, the ALJ concluded that Plaintiff's mental impairment was "severe" and undertook the residual functional capacity analysis earlier described.

In order to find a "marked" limitation in daily activities, or a "marked" difficulty in maintaining social functioning, a plaintiff must show that the mental impairment "seriously interfere[s] with the ability to function independently, appropriately and effectively." *Foster v. Bowen*, 853 F.2d 488, 491 (6th Cir. 1988).

Although physicians who evaluated Plaintiff's mental condition made findings consistent with serious mental impairments (Tr. at 118-19, 144, 148), Dr. Shah reported that after five days, Plaintiff stopped using prescribed medication because he said he was feeling better. (Tr. at 127.) Plaintiff was discharged from treatment after "satisfactory completion of goals." (Tr. at 124.) Four years later, in May 2002, Plaintiff came to Dr. Shah again. Within a month after beginning treatment, Plaintiff declined further therapy stating that he felt better. (Tr. at 121.) During that same month, Plaintiff reported to Dr. Weitz that he felt "much improved" after starting on

medication. (Tr. at 173.) Plaintiff recounted only "some mild anxiety." (*Id.*) In January 2003, after having apparently returned to Dr. Shah, the doctor discharged Plaintiff after Plaintiff asked for an increased dosage of prescription medication which the doctor declined to provide. (Tr. at 116.) Three months later, Plaintiff reported to Dr. Weitz that he was "doing well" on the medications prescribed, that he had no side effects, and that he felt "much better than he did before." (Tr. at 161.) In September 2003, the doctor characterized Plaintiff's condition as "stable" and concluded he could undertake a "low stress job." (Tr. at 153, 159.)

On this record, I therefore suggest that substantial evidence supports the ALJ's finding that Plaintiff failed to meet the "B" criteria of the Commissioner's mental impairment analysis procedure. *See Baker v. Astrue*, No. 6:07-339-KKC, 2008 WL 1790277 (E.D. Ky. Apr. 18, 2008) (substantial evidence supported ALJ's conclusion that plaintiff was not disabled due to mental impairments where plaintiff was alert and oriented, had adequate judgment, and "admitted that her symptoms improved"); *Vance v. Comm'r of Social Security*, No. 07-5793, 2008 WL 162942,*5 (6th Cir. Jan. 15, 2008) (substantial evidence supported ALJ's finding that claimant's allegations of pain and limitations were not credible where fibromyalgia symptoms "either improved or remained stable.").

In *Cornette v. Comm'r of Health & Human Servs.*, 869 F.2d 260 (6th Cir. 1988), the ALJ found that the plaintiff's condition met both the A and B criteria of Listed Impairment 12.04. At issue was the date of disability. In that case, there was testimony that the plaintiff's wife had to assist him in bathing and putting on his clothes. The plaintiff twice tried to commit suicide, and plaintiff did nothing but lie in bed and watch television. *Id*. at 264.

In *Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991), the court reversed a finding of nondisability and held that the plaintiff there met both the A and B criteria of Listed Mental

13

Impairment 12.08. In *Lankford*, there was abundant evidence of repeated suicide attempts, violent behavior and repeated lengthy hospitalizations for treatment of mental disorders.

The facts of these cases stand in contrast to those of the instant case. There is, I further suggest, no meaningful indication in this record that mental impairments rendered Plaintiff with "no useful ability to follow work rules, deal with the public, interact with supervisors, cope with work stress or relate predictably in social situations[,]" as was the case in *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1068 (6th Cir. 1992).

Plaintiff contends that the ALJ erred by failing to give the opinion of Dr. Heasley, D.O., controlling weight. (Dkt. 14 at 4-8.) In weighing medical opinions, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Here, as noted by the ALJ, within one month of findings consistent with serious impairments (Tr. at 144), the doctor reported that prescribed medications were working and Plaintiff was sleeping better. (Tr. at 283.) Although Plaintiff exhibited depression and anger, his affect was noted as "labile" and his thought processes and content were both considered "normal." (*Id.*, *see also* Tr. at 276, 280-81.) Within months of making these findings, the doctor nevertheless opined that Plaintiff was "markedly limited" in numerous areas. (Tr. at 141.) Four to six months later, the doctor noted that Plaintiff "seems to be calm" and that he "seems calmer." (Tr. at 273.) These inconsistencies, I suggest, justify the ALJ in concluding that Dr. Heasley's opinions are unworthy of being given controlling weight.

Plaintiff argues that the ALJ erred in "evaluating" the testimony of the vocational expert ("VE"). (Dkt. 14 at 8-10.) However, I suggest that the ALJ's findings in fact follow the opinions

of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence, and in particular, the findings and assessments described above by Dr. Heasley, as well as specific findings made by Dr. Weitz in September, 2003 that Plaintiff could undertake a "low stress" job. (Tr. at 159.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

After review of the record, I thus conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                 s/ *Charles E Binder*
                                                 CHARLES E. BINDER
Dated: April 24, 2008                   United States Magistrate Judge

### **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet L. Parker, the Commissioner of Social Security, and on Seymour Berger, and served on District Judge Zatkoff in the traditional manner.

Date: April 24, 2008            By     s/Patricia T. Morris
                                                  Law Clerk to Magistrate Judge Binder